Libby Anne BRANTLEY, Appellant,

v.

Larry D. ETTER, Stewart Title Company,
Professional Realty, and Sandison
Realty, Appellees.

No. 16934.

Court of Appeals of Texas,
San Antonio.

Nov. 30, 1983.

Rehearing Denied Dec. 27, 1983.

Stephen Parten, Law Offices of O'Neal Munn, Roy White & Stanley Allen, San Antonio, for appellant.

William B. Chenault, III, James R. Bass, William Denton Bailey, San Antonio, for appellees.

Before ESQUIVEL, CANTU and REEVES, JJ.

## OPINION

CANTU, Justice.

This is an appeal from the granting of specific performance of an earnest money contract for the sale of a residence located in Bexar County, Texas. The suit was brought by Larry D. Etter as buyer on the contract when appellant, one of the sellers, refused to perform. When appellant repeatedly refused to appear for her scheduled deposition, a motion for sanctions was filed by appellee Etter, and a default judgment and other sanctions were granted. We affirm the part of the judgment based on the motion for sanctions, but reverse and remand for a jury trial on the issue of reasonable attorney's fees since the trial court erroneously deprived appellant of a jury trial on that issue.

An earnest money contract dated November 13, 1976 was executed by James Brantley and his wife, Libby Brantley, the appellant, as sellers and by Larry Etter and his wife as buyers. Cargel, Inc., d/b/a Professional Realty Co., who represented the sellers, and Sandison Realty Co., who represented the buyers, were each to receive a three percent (3%) broker's fee. However, two days after the earnest money contract was executed, appellant's attorney wrote a letter to the parties involved stating that his client no longer wished to consummate the sale. The earnest money contract set the closing for November 26, 1976. The Etters and James Brantley appeared at the closing and executed the required documents. Appellant did not appear.

On January 3, 1977 Larry Etter filed this suit against appellant demanding specific performance of the earnest money contract. Shortly thereafter appellant moved to Germany and has not been heard from since.

Stewart Title, the title company on the sale, interpleaded the $200.00 earnest money paid by the Etters and sought attorney's fees for its troubles. Professional Realty interposed a claim for its commission. The interpleader and all answers were on file by June of 1977. The case lay dormant until October 15, 1979 when appellant filed a motion to dismiss for want of prosecution. Etter responded with a notice of intent to depose appellant. Appellant's attorney filed a motion to quash the notice of intent to depose and a hearing was held. The trial court's order was never reduced to writing and each side interpreted the ruling differently. Appellant's attorney assumed the motion was granted; Etter claimed that the court ordered the deposition taken, and Stewart Title contended that the court gave appellant's attorney three weeks to produce appellant for deposition. In any event, another notice of intent to depose appellant was filed and again appellant failed to appear.

Thereafter Etter filed a motion for sanctions based on appellant's failure to appear

for her deposition. At the hearing on this motion which was somewhat abbreviated, attorneys representing appellant, Etter, Professional Realty and Stewart Title were present and addressed the court but no evidence was presented.[1] The motion seeking sanctions was granted and the court signed an order on July 11, 1980, striking appellant's pleadings, granting an interlocutory default judgment, ordering appellant to specifically perform under the contract, transferring all appellant's right, title and interest in the property to Etter, and awarding Etter title to and possession of the property. The order granting sanctions also assessed attorney's fees and court costs against appellant, but deferred the amounts pending a final hearing on the merits.[2]

An evidentiary hearing on the issue of attorney's fees, court costs and other relief sought was held on August 27, 1980. Appellant's attorney appeared in behalf of appellant who was not present. The trial court, at the outset, recognized that the order imposing sanctions was interlocutory and left undecided the question of attorney's fees and the cross-actions of the appellees. Although appellant had previously demanded a jury, the trial court proceeded to trial without a jury over the objection of appellant's attorney.[3] The court reasoned

---

1. Three letters were offered and presented to the court but they do not appear in the record.

2. Appellee Etter's motion invoked the provisions of TEX.R.CIV.P. 215a(c) which provides in pertinent part:

 If a party or an officer or managing agent of a party, except for good cause shown, fails to appear before the officer who is to take his oral deposition or his answers to written questions or cross-questions under these rules, after proper service of subpoena or notice as provided in Rule 201, the court in which the action is pending on motion and notice may strike out all or any part of the pleading of that party, or dismiss the action or proceeding or any part thereof, or direct that such party shall not be permitted to present his grounds for relief or his defense, or enter a judgment by default against that party, or make such other order with respect thereto as may be just. . . .

 Rule 215a(c) does not specifically provide for the assessing of court costs and attorney's fees as do the provisions of Rule 215a(a) and (b) unless it be by making "such other order with respect thereto as may be just."

 Even though the court announced that it would assess attorney's fees for Etter pursuant to his motion for sanctions, at the formal hearing no attorney's fees were awarded to appellee Etter pursuant to his motion for sanctions and, therefore, the attorney's fees awarded appellee Stewart Title were as arise incident to the filing of its bill of interpleader. See United States v. Ray Thomas Gravel Co., 380 S.W.2d 576, 580 (Tex.1964).

3. The colloquy between the judge and the attorneys is set out as follows:

 THE COURT: ... The Court construes the language of the order heretofore rendered as having deprived the defendant, Libby Anne Brantley, of any claim to or title to the property in question. The order being interlocutory however, leaves remaining the issue as to recovery of attorneys fees against the defendant, Libby Anne Brantley. The remaining parties, other than Libby Anne Brantley, have, and will stipulate into the record that they waive any in personam claim against the defendant, Libby Anne Brantley, for attorneys fees; is that correct, gentlemen?
 MR. CHENAULT: I believe that's correct, Your Honor.
 MR. MCGARR: That is correct.
 MR. BAILEY: That is correct.
 THE COURT: The Court holds, therefore, that any issue of fact concerning the claim against Libby Anne Brantley has been disposed of by such waiver. These findings and this record as made pursuant to the issue as to whether Libby Anne Brantley, who has heretofore demanded a jury, is required to waive that jury trial if the other parties beside [sic] her are willing to do so. The Court concludes that no in personam judgment being claimed against Mrs. Brantley, the defendant, Mrs. Brantley, there is no issue of fact—Strike that. And the Court having heretofore rendered judgment depriving her of any interest to the property involved, there is no issue of fact as to the litigation that remains as against the defendant, Mrs. Brantley. Therefore, the Court holds that the remaining parties, other than Mrs. Brantley, are entitled to waive the jury and will so proceed to trial without a jury present.
 MR. CHENAULT: If it please the Court, I'm Bill Chenault. I represent Stewart Title Company, and we hereby waive our right to the jury on the remaining fact issues.
 MR. MCGARR: I'm John McGarr, law offices of James Bass. We represent Cargill, Inc., and we would also request a waiver of the right to a jury trial.
 MR. BAILEY: My name is Bill Bailey. I represent the plaintiffs, Mr. and Mrs. Larry Etter, and we waive our right to jury trial.

that since the default judgment had deprived appellant of all her interest in the property, and since the other parties agreed to waive any *in personam* claim against appellant, no fact issues involving appellant remained for a jury. Following a hearing, the court entered its final judgment which incorporated the earlier order for sanctions. Stewart Title as interpleader was awarded $500.00 in attorney's fees and Professional Realty was awarded a commission of $496.50,[4] both charged against appellant's equity in the property.

■ Appellant complains in her third point of error that the trial court erred when it denied her a jury trial at both the hearing on the motion for sanctions and at the final hearing on attorney's fees and pending cross-actions. The complaint regarding the lack of a jury at the hearing on the motion for sanctions has no merit. The only matters before the court once it determined that appellant had not appeared for her deposition was whether to impose sanctions and, if so, which ones. This was a matter for the discretion of the court. *Fisher v. Continental Illinois National Bank and Trust Co. of Chicago,* 424 S.W.2d 664, 670 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

■ We do find merit, however, in the contention that it was error to deny appellant her jury trial at the final hearing on attorney's fees and other relief sought, and we will reverse and remand the case for a jury trial on this point. The rendering of a

default judgment as a sanction for failure to permit discovery does not dispense with the necessity of a jury trial, if one has been demanded, on an unliquidated claim. *Illinois Employers Insurance Co. of Wausau v. Lewis,* 582 S.W.2d 242, 246 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.); *Rainwater v. Haddox,* 544 S.W.2d 729, 732 (Tex.Civ.App.—Amarillo 1976, no writ); TEX.R. CIV.P. 243. The question of reasonable attorney's fees incurred as a result of necessity to file a bill of interpleader is a fact issue. *Grand Lodge Colored Knights of Pythia v. Watson,* 145 S.W.2d 601, 603 (Tex.Civ.App.—Waco 1940, no writ), and should properly be submitted for jury determination. *See Luse v. Crispin Co.,* 344 S.W.2d 926, 934–35 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.); *Shaw v. Shaw,* 28 S.W.2d 173, 178 (Tex.Civ.App.—Waco 1930, writ dism'd w.o.j.). When appellant, through her attorney, appeared for trial and objected to the removal of the cause from the jury docket, the trial court was unauthorized to deny her a jury trial. *Illinois Employers Insurance Co. of Wausau v. Lewis, supra; Rainwater v. Haddox, supra.*

■ We cannot leave our discussion of this point of error without dispelling the erroneous theory that appellant had no interest in the property, since this was the means used by the trial court to circumvent appellant's right to a jury trial. In fact, appellant retained a right to the proceeds of the sale of the property which the default judgment could not destroy. A default judgment must conform to the pleadings.

THE COURT: To an in personam judgment.
MR. BAILEY: Right.
MR. MCGARR: Right.
MR. PARTEN: May I?
THE COURT: Yes, sir.
MR. PARTEN: My name is Stephen Parten, and I have been representing Libby Brantley in this cause, and I am not waiving a jury trial. I'm objecting to the matter being tried before the Court rather than before a jury. I'm objecting to the Court's findings that Mrs. Brantley no longer has an interest in the litigation at this point in that the judgment, if the Court have any, would be rendered against the property and she still has an interest in the property. She still has an interest in the proceeds from the sale of the property, and that any attorneys fees in this

case would be adjudged against the equity of the property and pursuant to any earnest money contract for purchase of the house monies would be paid to Mrs. Brantley pursuant to that contract, and those attorneys fees would be taxed against the proceeds due to her under this order for the sale of the house.
THE COURT: All right. I'll overrule the objection....

4. The commission sought to be recovered by Professional Realty was a liquidated amount and was not addressed by the interlocutory default judgment. The trial court correctly heard evidence supporting the claim and permitted appellant's attorney to cross-examine the witness.

*Mullen v. Roberts,* 423 S.W.2d 576, 579 (Tex.1968); *Hubbard v. Lagow,* 576 S.W.2d 163, 167 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). Likewise, the court has no power to decree specific performance in any manner except in keeping with the terms of the agreement made by the parties. *Martin v. Martin,* 230 S.W.2d 547, 551 (Tex.Civ. App.—San Antonio 1950, writ ref'd n.r.e.). Neither the pleadings nor the contract in the instant case attempted to deprive appellant of her entire interest in the property and the proceeds from the sale thereof. Etter's petition prayed for a decree requiring appellant to specifically perform her contract to sell the property according to the contract's terms. The contract called, *inter alia,* for a cash down payment of $2,010.00 and the buyers' assumption of the unpaid balance of the sellers' promissory note in exchange for the sale of the property. It can hardly be argued that the default judgment, as interpreted by the trial court, conformed either to the pleadings or to the contract. In order to conform to the pleadings and contract the default judgment must be read as transferring only the right, title and interest in the property that appellant contracted to transfer.

Appellees claim that as a practical matter the judgment for attorneys' fees and for Professional Realty's commission consumed appellant's entire equity. The evidence does not support this contention. The only evidence presented regarding the amount of proceeds was that the sellers were to receive around $700.00 in net proceeds from the sale after the payment of commissions, title insurance and other closing costs. If the $500.00 in attorneys' fees awarded to Stewart Title are deducted from these proceeds, appellant could still expect to receive $200.00 from the sale.[5]

Since appellant retained an interest in the property, and since she had requested a jury trial and, through her attorney, vigorously objected to the removal of the cause from the jury docket, it was error for the trial court to proceed without a jury.

We have reviewed appellant's remaining points of error and find no merit in them. However, in view of our disposition remanding this case, we deem it prudent to discuss these contentions.

 Appellant's first point argues that the trial court erred in entering a specific performance judgment against appellant since Etter repudiated the earnest money contract. The alleged repudiation came about when Etter signed a release and request for the return of his earnest money at the title company sometime in January, 1977. Etter testified that he did not remember whether this occurred before or after he filed his lawsuit. Repudiation is in the nature of an avoidance or affirmative defense which is not available to the defendant unless specifically pleaded. *See Mid-Tex Construction Corp. v. Passero,* 430 S.W.2d 515, 517 (Tex.Civ.App.—El Paso 1968, writ ref'd n.r.e.). Appellant neither pleaded nor proved repudiation of the contract by Etter. Even if appellant had pleaded the affirmative defense, the order of the court striking her pleadings had the effect of denying appellant her right to present such grounds of defense. Appellant claims the repudiation was tried by consent. No evidence was offered at the hearing on the motion for sanctions in which the default judgment was entered. The only testimony regarding Etter's repudiation was elicited by appellant at the final hearing after the interlocutory default judgment had already been entered. The first point is overruled.

 In her second point of error, appellant asserts that the court's judgment is erroneous since Etter failed to tender or to

---

5. The final judgment provides for an award of attorney's fees to Stewart Title's attorney in the amount of $500.00 for filing the bill of interpleader, an award of real estate commission to Professional Realty in the amount of $496.50, court costs in the amount of $66.00 and the customary expenses involved in closing a real estate transaction. If the known expenses are deducted from the equity totalling $2,010.00, then the balance of $947.50 would be more than sufficient to cover the expenses of closing the transaction and providing a balance for appellant.

offer to tender the down payment required by the earnest money contract. Yet admittedly, by the time set for closing, appellant had repudiated the contract by the letter sent by her attorney. It is settled law that where a defendant has openly and avowedly refused to perform his part of a contract, or declared his intention not to perform it, a plaintiff need not make tender of the consideration before bringing suit. *Burford v. Pounders,* 145 Tex. 460, 199 S.W.2d 141, 144 (1947). It is sufficient if he is ready and willing and offers to perform in his pleadings. *Burford v. Pounders, supra; Hawn v. Hawn,* 574 S.W.2d 883, 887 (Tex.Civ.App.— Eastland 1978, writ ref'd n.r.e.); *Smith v. Nash,* 571 S.W.2d 372, 376 (Tex.Civ.App.— Texarkana 1978, no writ); *Henry v. Mr. M Convenience Stores, Inc.,* 543 S.W.2d 393, 395 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Appellant seizes on the language of *Burford v. Pounders,* which says that the buyer must offer to perform in his pleadings. Appellant says that Etter did not offer to perform in his pleadings or in his testimony. We do not read the above line of cases to require that the buyer offer to perform. In cases where the seller has repudiated, a formal tender or offer to perform would be a "vain and useless thing." *Burford v. Pounders, supra.* The above-cited cases at most require only pleading and proof that the buyer was ready, willing, and able to perform. Etter testified at the final hearing that he was prepared to close from the time the signed contract was presented to Stewart Title, and that he was still prepared to close. While he did not recall whether he was asked to pay the down-payment at the closing, he testified that he took his checkbook with him and "had the $2,010.00 plus whatever else was needed to buy the house." This testimony shows Etter was, and is, ready, willing, and able to perform his obligations under the earnest

money contract. Neither do we agree with appellant that Etter's petition lacks an offer to perform.[6] While the petition did not use the language, "offer to perform," it shows that Etter did all the contract required him to do and that he demanded performance by appellant. Performance of one's duties under the contract to the extent permitted by the other party's breach goes beyond a mere offer to perform and will support the buyer's claim for specific performance. The second point is overruled.

Appellant complains in her fourth point that the trial court erred in granting an interlocutory default judgment without the presentation of evidence to support the judgment. *Rainwater v. Haddox, supra,* relied on by appellant, does not require an evidentiary hearing as a prerequisite to the granting of a default judgment under TEX.R.CIV.P. 215a. *See also Nutting v. National Homes Manufacturing Co.,* 639 S.W.2d 721, 723 (Tex.App.—Austin 1982, no writ); *Southern Pacific Transportation Co. v. Evans,* 590 S.W.2d 515, 519 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). These cases stand for the proposition that liability may be determined in a default judgment without evidentiary support as a sanction for failure to provide discovery, and there need only be an evidentiary hearing to establish the amount of plaintiff's unliquidated damages. Appellant's fourth point is overruled.

Appellant's fifth point asserts that the trial court abused its discretion in granting the motion for sanctions and entering a default judgment against her because her absence from the country is "good cause" under Rule 215a for her failure to

---

**6.** The fourth paragraph of Etter's petition states:

IV.

On November 23, 1976, the contract date for the closing of the sale, Plaintiff was ready, willing, and able to complete the sale. In fact, Plaintiff did in fact go to the Title Company where Defendant had tendered the

contract and Plaintiff did in fact execute all necessary instruments to complete the sale together with the delivery by the Plaintiff of all necessary funds required by him in the contract. Plaintiff thereupon demanded that Defendant consummate the purchase pursuant to the contract.

appear for her deposition. The imposition of sanctions for failure or refusal of a party to comply with discovery rules is directed to the sound discretion of the trial court, and such imposition can be set aside only upon a showing of clear abuse of discretion. *Bass v. Duffey,* 620 S.W.2d 847, 849 (Tex.Civ. App.—Houston [14th Dist.] 1981, no writ). The primary purpose of discovery sanctions is not punishment, but to secure compliance with the discovery rules and to prevent a party from arbitrarily and wantonly absenting himself from giving evidence in aid of litigation. *Rodebaugh v. Beachum,* 576 S.W.2d 143, 146 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.); *Plodzik v. Owens-Corning Fiberglass Corp.,* 549 S.W.2d 52, 54 (Tex. Civ.App.—Austin 1977, no writ). However, while encouraging compliance may be the primary purpose of discovery sanctions, it is not their only purpose; they also have the laudable function of deterring litigants from future abuses of the discovery process. *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747, 751 (1976); *Southern Pacific Transportation Co. v. Evans, supra.*

Appellant cites us to *Plodzik v. Owens-Corning Fiberglass Corp., supra.* *Plodzik* is distinguishable because in that case neither the appellant nor his attorney were notified of a court order that appellant appear for a deposition until after time for compliance had passed. The court held that proper notice should have been given and a reasonable time allowed after notice in which appellant could comply with the order. In the instant case, appellant's attorney received both notices of intent to depose appellant, and over seven months elapsed between the time of the first notice and the time sanctions were imposed.

■ We are also directed to *Snowden v. Republic Supply Co.,* 239 S.W.2d 201 (Tex. Civ.App.—Dallas 1951, writ ref'd n.r.e.), and *Rodebaugh v. Beachum, supra.* In both these cases the appellants did not appear for their depositions. In *Snowden* the appellant was temporarily out of the state on a business trip and had no knowledge that appellee intended to depose him. In *Rodebaugh* the appellant's attorney was unable to locate him during the short nine-day period between notice of intent to depose and the imposition of sanctions. In both cases it was held that the court abused its discretion in imposing sanctions because there was no evidence that the appellants had willfully absented themselves in order to avoid having their depositions taken. In the instant case we do not know why appellant chose to move to Germany. Indeed, it is not certain that she is still there; her attorney had been unable to locate or contact her in over three years prior to the imposition of sanctions. So while there is no evidence that appellant has willfully absented herself to avoid her deposition, the fact remains that she was aware of this litigation yet chose to ignore it and to abandon all contact with her attorney and all efforts to assist him in the defense of her case. Her absence and her disregard of the present lawsuit has assumed a permanent character; there is no indication that appellant will ever return to defend this suit. Given this set of facts, it was not an abuse of discretion for the trial court to impose sanctions upon appellant for her failure to cooperate in the appellees' discovery efforts. Appellant's fifth point is overruled.

■ In her sixth point appellant complains that the trial court denied her the right to cross-examine appellees' witnesses concerning the basis of the specific performance claim and Stewart Title's claim for attorney's fees. The cases interpreting Rule 215a are uniform in holding that the defendant, after a default judgment has been rendered against him, has the right to cross-examine plaintiff's witnesses and interpose objections to testimony offered by those witnesses upon an inquiry into the amount of unliquidated damages. *Illinois Employers Insurance Co. of Wausau v. Lewis, supra; Rainwater v. Haddox, supra.* This right does not extend to an inquiry into the basis of the default judgment, and a defendant sanctioned under Rule 215a may be denied the opportunity to present his grounds of defense to plaintiff's

cause of action. *Southern Pacific Transportation Co. v. Evans, supra.* The cases cited by appellant, *Knox v. Long,* 152 Tex. 291, 257 S.W.2d 289 (1953) and *Villanueva v. Rodriguez,* 300 S.W.2d 668 (Tex.Civ.App.—San Antonio 1957, writ ref'd n.r.e.), are pre-Rule 215a cases and are not controlling. An examination of the statement of facts reveals that the trial court was very lenient in allowing appellant's attorney to cross-examine appellees' witnesses. His questions covered not only matters relating to intervenor's attorneys' fees, but also matters relating to the merits of Etter's specific performance claim and the defensive issue of his execution of the release. We find no error in the trial court's actions.

■ Appellant's final point complains that the trial court erroneously sustained an objection to the admissibility of a letter her attorney sought to admit at the damages hearing. There was no error. The letter was one written by appellant's attorney informing the parties to the contract that appellant no longer wished to consummate the sale. The letter relates to the merits of the specific performance case and has no relevance to the issue of attorney's fees. It was properly excluded.

The cause is reversed and remanded to the trial court for a jury trial on the issue of attorney's fees. On all other points the judgment of the trial court is affirmed as set out in this opinion.

Affirmed in part; reversed and remanded in part.